IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:09CV |
| | ) | |
| vs. | ) | **VERIFIED COMPLAINT** |
| | ) | **FOR FORFEITURE** |
| $93,120.00 IN UNITED STATES CURRENCY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff, United States of America, and for its cause of action against the Defendant, states and alleges as follows:

1. The Court has jurisdiction of this matter pursuant to Title 28, United States Code, Sections 1345, 1355 and 1395, and pursuant to Title 21, United States Code, Section 881.

2. The Defendant is $93,120.00 in United States Currency.

3. The Defendant property is now and will be during the pendency of this action in the judicial district of the State of Nebraska.

4. On or about June 18, 2009, the Defendant property was seized in Seward County, Nebraska by troopers of the Nebraska State Patrol; the property is currently held by the U.S. Marshals Service. Immediately after said seizure, administrative forfeiture proceedings were instituted by the U. S. Drug Enforcement Administration.

5. Michael J. Fox has filed a Claim for ownership, pertaining to said Defendant property, with the U. S. Drug Enforcement Administration.

6. On June 18, 2009, Michael J. Fox was in possession of the Defendant property, as proceeds traceable to the exchange of a controlled substance, or alternatively, the Defendant property was used or was intended to be used to facilitate the transportation, sale, receipt, possession, concealment or distribution of a controlled substance, as more particularly described as follows:

a. On June 18, 2009, at approximately 7:23 a.m., Nebraska State Patrol Trooper Pelster was on duty, in a marked patrol unit, near Mile Marker 366 on Interstate 80 in Seward County, Nebraska. As he was conducting stationary radar, Trooper Pelster saw a newer blue SUV traveling in the westbound lane approaching his location. He estimated the vehicle's speed in excess of the posted 75 mph speed limit. Trooper Pelster activated the rear antenna of his radar unit and received a reading of 80 mph. He exited the median and caught up to the vehicle at Mile Marker 364. Trooper Pelster noticed a luggage carrier on top of the vehicle. He also noticed it was a 2009 Ford Explorer bearing Nevada license plates 943VYL.

b. At approximately 7:24 a.m., Trooper Pelster initiated a traffic stop at Mile Marker 361 on westbound I-80 in York County, Nebraska. Trooper Pelster exited his patrol unit, greeted the driver and explained the reason for the stop. The driver was identified by his California driver's license as Michael J. Fox, DOB 04/17/1962. Mr. Fox gave Trooper Pelster a rental agreement which stated he rented the vehicle. Trooper Pelster asked Mr. Fox if he was on business. Mr. Fox said he was on both business and vacation. Trooper Pelster asked Mr. Fox what he did for a living. After some hesitation, Mr.

2

Fox said, "I'm solar." Mr. Fox said he owned a solar business and he was coming from Ohio. He went to Pennsylvania and on to Tennessee from Ohio. Mr. Fox said he had been an engineer for sixteen years, then decided to go into the solar business. He said he did some independent work and some charity work. On the initial approach, Trooper Pelster saw a minimal amount of luggage and two small coolers in the cargo area of the SUV. He also saw a lot of trash inside the vehicle. Trooper Pelster noticed Mr. Fox hesitated when answering basic questions.

c.  At approximately 7:27 a.m., Mr. Fox said he rented the vehicle because he was having transmission problems with his Volvo. Trooper Pelster asked Mr. Fox to follow him back to his patrol unit. Trooper Pelster issued a warning for speeding and engaged Mr. Fox in casual conversation about his travel. While reviewing the rental documents, Trooper Pelster saw the vehicle was rented in Reno, Nevada, on June 3, 2009, and was due back to Reno on June 10, 2009. Mr. Fox said he rented the vehicle in Reno because he was there for a solar convention. He said he had extended the rental contract; it was now due in Reno on June 18, 2009.

d.  At approximately 7:29 a.m., Trooper Pelster asked Mr. Fox why he did not fly. Mr. Fox said, "Well, I have my sister." He said his sister lived in Wyoming. Mr. Fox then said he just wanted to make the drive. Mr. Fox said he went camping in Tennessee. He also said he left Reno, went to his sister's

3

in Wyoming, and then went on to Cleveland. In Cleveland, he met and had lunch with some sales staff from a company called "First Solar".

e. At approximately 7:34 a.m., Mr. Fox said he had a previous arrest for a criminal threat. He said he had not really been in trouble and he was "a business guy". Trooper Pelster ran a records check and criminal history on Mr. Fox. Trooper Pelster asked Mr. Fox again about his vehicle. Mr. Fox said he brought the topper of his own Volvo to Reno and put it on the rental Explorer. He also said he initially rented the vehicle for a week because he got a better rate that way. He then said he extended it for another week.

f. At approximately 7:38 a.m., Lincoln Communications told Trooper Pelster Mr. Fox had a valid driver's license and a positive criminal history. It also said to "use caution with this subject". Communications said there were three previous arrests for assault.

g. At approximately 7:42 a.m., Trooper Pelster returned all of Mr. Fox's documents to him, including a warning for speeding. Mr. Fox continued to talk to Trooper Pelster and remained in the front passenger seat. Trooper Pelster asked Mr. Fox if he could ask him additional questions. Mr. Fox said, "Sure, no problem." Mr. Fox denied being in possession of any firearms, drugs or large amounts of currency. Mr. Fox said, "I do not do drugs and I don't drink."

4

h.  At approximately 7:44 a.m., Trooper Pelster asked Mr. Fox for consent to search the vehicle. Mr. Fox said, "Sure, no problem." Trooper Pelster completed a Nebraska State Patrol Consent to Search form and read it to Mr. Fox. Mr. Fox said he understood the form and signed it. Mr. Fox said he had a key to the topper. He also said the topper contained camping gear and clothes. At approximately 7:46 a.m., Trooper Pelster asked Trooper Ryan Henrichs for assistance. At approximately 7:51 a.m., Trooper Henrichs arrived and the two began to search the vehicle.

i.  Trooper Pelster noted the topper was only half full. It contained two bags, a rolled up mat, a chair and other miscellaneous items. Some of the items were brand new with tags still on them.

j.  At approximately 8:00 a.m., Trooper Henrichs found a camouflage bag which contained a pillowcase which, in turn, contained several bundles of currency–some loose in the pillowcase and others inside a plastic bag. All of the bundles were individually wrapped with rubber bands.

k.  Mr. Fox was put into handcuffs for officer safety. The vehicle was towed to the Lincoln Traffic Office where it was processed. Canine Handler Trooper Gordon Downing conducted a discretionary sniff of the currency found in the vehicle. Trooper Downing's canine partner, Rex, gave positive identification to the odor of drugs emitting from the currency. The camouflage bag contained nineteen bundles of currency, all of which were transported to U.S. Bank and converted to a cashier's check in the amount of $93,120.00.

5

1.  Trooper Pelster attempted to interview Mr. Fox; however, Mr. Fox requested an attorney. Trooper Pelster completed a Voluntary Disclaimer of Ownership and Interest form and gave it to Mr. Fox. Mr. Fox read the form and signed it, disclaiming any interest and ownership of the currency found in the vehicle.

7. By reason of the foregoing, the Defendant property was used or was intended to be used to commit or facilitate the commission of violations of Title 21, United States Code, Sections 841 and 844. The Defendant property is therefore subject to forfeiture to the United States pursuant to Title 21, United States Code, Section 881(a)(6), and no other property rights should exist in it.

WHEREFORE, the Plaintiff, United States of America, prays the Defendant property be proceeded against for forfeiture in accordance with the laws and regulations of the rules of this Court; that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed; that the Defendant property be condemned, as forfeited, to the United States of America and disposed of according to law and regulation; that the costs of this action be assessed against the Defendant property; and for such other and further relief as this Court may deem just and equitable.

UNITED STATES OF AMERICA,
Plaintiff

DEBORAH R. GILG
United States Attorney

By: _____
NANCY A. SVOBODA (#17429)
Assistant U.S. Attorney
1620 Dodge Street, Suite 1400
Omaha, Nebraska 68102-1506
(402) 661-3700

VERIFICATION

STATE OF NEBRASKA    )
                     ) ss.
COUNTY OF DOUGLAS    )

Pursuant to Rule C(2), Supplemental Rules for Certain Admiralty or Maritime and Asset Forfeiture Claims, Assistant United States Attorney for the District of Nebraska, Nancy A. Svoboda, being first duly sworn, deposes and states that the facts set forth herein are true and correct according to the best of her knowledge and belief.

NANCY A. SVOBODA (#17429)
Assistant U.S. Attorney

Subscribed and sworn to before me this 19th day of October, 2009.

GENERAL NOTARY - State of Nebraska
SHARLEEN ANN MAXWELL
My Comm. Exp. June 6, 2013

Sharleen Ann Maxwell
Notary Public

Pursuant to the rules of this Court, the United States of America hereby requests the trial of the above and foregoing action be held in Omaha, Nebraska, and that it be calendared accordingly.

NANCY A. SVOBODA
Assistant U.S. Attorney

7